UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,  Plaintiff,  v.  THOMAS F. O'ROURKE,  Defendant. | Civil Action No. _____  **COMPLAINT** |

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges:

## SUMMARY

1. This action relates to violations of the Foreign Corrupt Practices Act (the "FCPA") by Noble Corporation ("Noble"), an international provider of offshore drilling services and equipment to oil companies throughout the world, including Nigeria.

2. From January 2003 through May 2007, Noble authorized, and its Nigerian subsidiary ("Noble-Nigeria") made payments to its customs agent in Nigeria. A portion of those payments were passed on to Nigerian government officials to obtain temporary importation permits ("TIPs") and TIP extensions for Noble's drilling rigs. In addition, some of Noble-Nigeria's TIPs were obtained with false paperwork.

3. The Nigeria Customs Service ("NCS"), a Nigerian government agency, controlled the issuance of TIPs and TIP extensions. At the expiration of TIPs and any lawful extensions, Noble-Nigeria was required to move its rigs out of Nigeria. To avoid the risk of operating without a valid permit and the costs of moving the rigs, including the loss of profits, and to retain lucrative drilling contracts, officials of Noble-Nigeria authorized its customs agent to submit

false documents to the NCS to reflect physical export and re-import of its drilling rigs when in fact the rigs never moved.  Certain Noble officials authorized, and certain Noble-Nigeria officials made, payments to the customs agent to obtain permits based on these false documents, believing that portions of the payments would be passed on to NCS officials.  By obtaining TIPs with false paperwork, Noble obtained profits from continued operation of rigs in Nigeria, retained contracts, and avoided the costs of moving rigs out of and back into Nigerian waters.

4. Payments authorized by Noble and made by Noble-Nigeria to its Nigerian customs agent for the purpose of obtaining TIPs and TIP extensions constituted violations by Noble of Section 30A of the Securities Exchange Act of 1934 (the "Exchange Act").

5. Noble violated Section 13(b)(2)(A) of the Exchange Act by improperly recording in its accounting books and records the portions of payments to its Nigerian customs agent that certain Noble personnel believed were being passed on to NCS officials for the purpose of obtaining TIPs or TIP extensions.

6. Noble violated Section 13(b)(2)(B) of the Exchange Act by failing to maintain internal controls to detect and prevent payments going to customs officials in Nigeria.

7. Thomas F. O'Rourke ("Defendant") was Noble's head of Internal Audit or Controller during part of Noble's violations.  He knowingly or recklessly provided substantial assistance to Noble in its violations.  As a consequence, Defendant aided and abetted Noble's violations of Sections 30A, 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act.  Defendant knowingly circumvented or failed to implement a system of internal controls, and falsified Noble's books and records in connection with Noble's payments to Nigerian government officials.  As a consequence, Defendant violated Section 13(b)(5) and Rule 13b2-1 of the Exchange Act.

**JURISDICTION**

8. This Court has jurisdiction over this action under Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa]. Noble and the Defendant, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

9. Venue is appropriate in this Court under Section 27 of the Exchange Act [15 U.S.C. § 78aa] or 28 U.S.C. § 1391(d) because certain acts or transactions constituting the violations by Defendant occurred in this district.

**DEFENDANT AND OTHER ENTITIES**

10. Defendant O'Rourke was Noble's Director of Internal Audit from May 2003 through September 2005 and Vice President of Internal Audit from January 2007 to January 2008. From September 2005 through December 2006, O'Rourke served as Noble's corporate Controller. He resides in Texas.

11. Noble Corporation is a Swiss company whose common stock is registered under Section 12(b) of the Exchange Act and trades on the New York Stock Exchange under the symbol "NE". The main U.S. office for the Noble group of companies operating in the U.S. is in Sugar Land, Texas. Prior to March 2009 and during the relevant period, the parent company of the Noble group of companies was a Cayman Islands corporation also named Noble Corporation with headquarters and principal executive offices in Sugar Land, Texas. In March 2009, the place of incorporation of the parent of the Noble group of companies was established in Switzerland and the corporate and principal executive offices relocated from Sugar Land. "Noble" herein refers to the Swiss parent company and, prior to it becoming the parent company

of the Noble group of companies in March 2009, the Cayman Islands parent. Noble, through its subsidiaries, provides diversified services for the oil and gas industry and performs contract drilling services with its fleet of mobile offshore drilling units located around the world.

12. Noble Drilling (Nigeria) Ltd., ("Noble-Nigeria") is a wholly-owned subsidiary of Noble. Noble-Nigeria was incorporated in Nigeria in September 1990 as an oil industry service company. Its financial results are consolidated into the financial statements of Noble.

## FACTUAL ALLEGATIONS

### Noble's Violations

13. Between January 2003 and May 2007, Noble-Nigeria operated drilling rigs in Nigeria. Noble-Nigeria obtained TIPs, through its customs agent, from the NCS in order to operate its rigs in Nigerian waters.

14. At the expiration of a valid TIP and all extensions, Noble-Nigeria would risk sanctions if it did not export a rig from Nigerian waters.

15. In order to reduce the risk of such sanctions, and rather than undergo the costs, lost profits, and lost business associated with towing its rigs out of and back into Nigerian waters, Noble-Nigeria authorized its customs agent to provide false documents to the NCS showing export and re-import of its rigs when the rigs never actually moved.

16. Noble authorized, and Noble-Nigeria made, payments to the customs agent in connection with all TIP applications and extensions, including those involving false paperwork. Noble personnel believed that a portion of Noble-Nigeria's payments to the customs agent would be passed on to government officials for the purpose of obtaining the TIPs and TIP extensions.

17. Noble-Nigeria's customs agent designated certain costs as "special handling charges" on invoices associated with TIP extensions and TIPs obtained through false paperwork.

Certain Noble and Noble-Nigeria personnel believed that the term "special handling charge" referred to the payments the agent made to Nigerian government officials to influence or induce the granting of TIPS and extensions.

18. Noble-Nigeria improperly recorded "special handling charges," or the portion of the payments to its customs agent that certain Noble personnel believed were being passed on to Nigerian government officials, as legitimate operating expenses. These improper entries were consolidated into an expense item on Noble's Consolidated Statements of Income.

19. Noble lacked sufficient FCPA procedures, training, and internal controls to prevent the use of false paperwork and payments to Nigerian government officials to obtain TIPs and extensions.

20. Noble officials, including the Defendant, used means of interstate commerce, including e-mail communications within the United States, to communicate among themselves, with Noble-Nigeria, and with others, about TIPs, TIP extensions, false paperwork for TIPs, "facilitating payments," "special handling charges," approvals for payments to NCS officials, and the accounting for payments to government officials.

21. As a result of the conduct described above, Noble violated Sections 30A, 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act. On November 12, 2010, this Court issued a final judgment in which Noble consented to being enjoined against violations of these provisions and to other remedies. *See SEC v. Noble*, 4:10-cv-04336 (LHR), filed Nov. 4, 2010 (S.D. Tex.).

**Defendant's Violations**

22. Defendant O'Rourke was Noble's Director of Internal Audit from May 2003 through September 2005, and he was Controller from September 2005 through December 2006. He was the Vice President of Internal Audit from January 2007 to January 2008.

23. As a result of his internal audit work in 2004, O'Rourke understood that Noble-Nigeria had used false paperwork to obtain TIPs, and that Noble-Nigeria paid its customs agent for "special handling charges" that were passed through to Nigerian officials. He also knew that the "special handling charges" were entered into Noble-Nigeria's books as legitimate operating expenses, and he knew or was reckless in not knowing that those entries were improper.

24. Also in 2004, O'Rourke participated in a specific internal review of Noble-Nigeria's accounting for payments to government officials. In that review, he knowingly allowed TIP-related payments to government officials to be improperly accounted for as legitimate operating expenses.

25. O'Rourke prepared audit reports in 2004 that informed Noble's audit committee that Noble-Nigeria had obtained a TIP with false paperwork, and that Noble-Nigeria had ended the practice.

26. In 2005, O'Rourke knew that Noble-Nigeria resumed using false paperwork to obtain TIPs, and that Noble-Nigeria paid high "special handling charges" to obtain false-paperwork TIPs. O'Rourke knew, or was reckless in not knowing, that the "special handling charges" were for improper payments to NCS officials to induce such officials into processing the false paperwork Noble submitted to NCS to obtain TIPs and TIP extensions.

27. As Director of Internal Audit in 2005, O'Rourke facilitated Noble's approval of the "special handling charges" for false-paperwork TIPs. O'Rourke acted as an intermediary between Noble-Nigeria and the chief financial officer and advised the chief financial officer regarding approval of the charges. O'Rourke did not inform the Audit Committee that the practice of securing TIPs with false paperwork and payments to Nigerian government officials has resumed.

28. Noble's internal controls required that payments to government officials be approved by the chief financial officer. As Controller in late 2005 and throughout 2006, and again as Vice President of Internal Audit in 2007, O'Rourke reviewed requests from Noble-Nigeria to pay "special handling charges" for false paperwork TIPs, and he forwarded his recommendations regarding approval of the charges to the chief financial officer.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Aiding and Abetting Violations of Section 30A of the Exchange Act
**(Anti-Bribery)**

29. Paragraphs 1 through 28 above are realleged and incorporated by reference.

30. As described above, Noble made use of the mails or other means or instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to one or more persons, while knowing that all or a portion of those payments would be offered, given, or promised, directly or indirectly, to foreign officials for the purposes of influencing their acts or decisions in their official capacity, inducing them to do or omit to do actions in violation of their official duties, securing an improper advantage, or inducing such foreign officials to use their influence with foreign governments or instrumentalities thereof to assist Noble in obtaining or retaining business.

31. O'Rourke knowingly or recklessly provided substantial assistance to Noble in its violations of Section 30A of the Exchange Act [15 U.S.C. 78dd-1].

32. By reason of the foregoing, O'Rourke aided and abetted, and unless restrained and enjoined may continue to aid and abet, violations of Section 30A of the Exchange Act.

## SECOND CLAIM
### Violations of Section 13(b)(5) of the Exchange Act and Exchange Act Rule 13b2-1
### (Circumvention of Internal Controls and Falsification of Books and Records)

33. Paragraphs 1 through 32 above are realleged and incorporated by reference.

34. As described above, O'Rourke knowingly circumvented Noble's internal controls or failed to implement a system of internal accounting controls, and falsified Noble's books, accounts, and records, including those described in Section 13(b)(2)(A) of the Exchange Act.

35. By reason of the foregoing, O'Rourke violated, and unless restrained and enjoined may continue to violate, Section 13(b)(5) of the Exchange Act and Exchange Act Rule 13b2-1 [15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1].

## THIRD CLAIM
### Aiding and Abetting Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act
### (Books and Records and Internal Controls)

36. Paragraphs 1 through 35 above are realleged and incorporated by reference.

37. Noble inaccurately recorded bribes as legitimate business expenses, causing inaccuracies in Noble's consolidated books and records in violation of Sections 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

38. Noble failed to maintain internal controls to detect and prevent payments going to customs officials in Nigeria in violation of Section 13(b)(2)(B) of the Exchange Act.

39. As described above, O'Rourke recklessly provided substantial assistance to Noble in its violations.

40. By reason of the foregoing, O'Rourke aided and abetted, and unless restrained and enjoined may continue to aid and abet, violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

**PRAYER FOR RELIEF**

The Commission respectfully requests that this Court:

(1) enter an order permanently enjoining Defendant O'Rourke from violating Sections 13(b)(5) and 30A [15 U.S.C. §§ 78m(b)(5) and 78dd-1] of the Exchange Act and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] and from aiding and abetting violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)];

(2) order Defendant O'Rourke to pay a civil penalty pursuant to Sections 21(d)(3) and 32(c) of the Exchange Act [15 U.S.C. §§ 78u(d)(3) and 78ff(c)]; and

(3) grant the Commission such other and further relief as is just and appropriate.

Dated: February 24, 2012								Respectfully submitted,

/s/ Toby M. Galloway
Toby M. Galloway
Attorney-in-Charge
Texas Bar No. 00790733
S.D. Bar No. 18947

Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102-6882
Telephone: (817) 978-6447
Facsimile: (817) 978-4927
gallowayt@sec.gov

Of Counsel:

Kenneth W. Donnelly
Gerald W. Hodgkins
Moira T. Roberts
Sharan K.S. Custer
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-5949
Telephone: (202) 551-4946